```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
JOHN P. TYLER,

                            Plaintiff,           00-CV-6366
    -vs-
                                                 DECISION
                                                 and ORDER
KAWAGUCHI INC., GENERAL PLASTEX, INC.
and DSM ENGINEERING PLASTICS
INC.


                            Defendants.
_____
```

## INTRODUCTION

Plaintiff, John P. Tyler, ("plaintiff" or "Tyler") brings this action for negligence, strict products liability, and breach of express and implied warranties against defendants Kawaguchi, Inc. ("Kawaguchi"), General Plastex, Inc. ("Plastex"), and DSM Engineering Plastics, Inc. ("DSM"). Plaintiff alleges that each defendant is liable for the injuries he sustained in a work related accident. Each defendant moves for summary judgment dismissing the complaint pursuant to Federal Rule of Civil Procedure 56(c). In addition, defendants, Kawaguchi and Plastex move to preclude plaintiff's proposed expert testimony as conclusory and unreliable pursuant to Federal Rule of Evidence 702.

For the reasons set forth below, defendants' motions to preclude plaintiff's expert testimony are denied. Kawaguchi's motion for summary judgment with respect to plaintiff's negligence claim is denied, with respect to plaintiff's strict

products liability claim is denied, and with respect to plaintiff's breach of warranty claim is granted. Plastex's motion for summary judgment is denied in its entirety. DSM's motion for summary judgment with respect to plaintiff's negligence claim is denied, with respect to plaintiff's strict products liability claim is granted, and with respect to plaintiff's breach of warranty claim is granted.

## OVERVIEW

Harbec Plastics is an Ontario, New York-based plastics manufacturing company that produces plastics for various industrial uses. Plaintiff was employed by Harbec Plastics as a maintenance person. His job included maintaining complex machines such as plastic injection molding machines. At the time of plaintiff's injury, Harbec utilized between 14 and 20 plastic injection molding machines for the manufacture of plastics parts. Two of these injection molding machines were manufactured by the defendant Kawaguchi, and of the two Kawaguchi machines, the K265-B plastic injection molding machine was involved in the incident giving rise to this litigation. The machine contained a 55-millimeter screw manufactured by defendant, Plastex. The Plastex screw was not the original screw, but was a replacement part that Harbec had purchased from Plastex when the original Kawaguchi screw had worn out. Additionally in manufacturing the plastic parts, a heat stabilized nylon plastic manufactured by defendant, DSM, called Stanyl flowed inside the machine. The Kawaguchi plastic

injection molding machine, the Plastex screw and, the DSM Stanyl plastic all are subjects of the present action.

## BACKGROUND

On May 7, 1999, the plaintiff was told by his shift supervisor that a hydraulic line had broken on the Kawaguchi K 265-B plastic injection machine ("the machine"). Plaintiff, together with his supervisor, cleaned the hydraulic spill, replaced the hydraulic line, and refilled the machine with hydraulic fluid. The machine was shut down for approximately three hours while the repair was completed during which time the Stanyl plastic inside the machine was allowed to harden in the machine's barrel. When the machine was turned back on, the screw within the barrel would not move or purge because the Stanyl plastic inside the machine had hardened. In an attempt to dislodge the plastic, the plaintiff and his co-workers pivoted the barrel away from its normal operating position and away from its guards into the aisle of the factory. They removed the nozzle, the end cap and the screw collar, leaving the barrel end exposed. The employees unsuccessfully tried to push the screw out using a hydraulic press and a brass rod. Plaintiff then left the area to complete another task. Fellow employees continued to attempt to loosen the screw. One employee, whose identity remains a point of contention, turned the temperature on the machine up to 700 degrees Fahrenheit in a final attempt to loosen the screw. The Stanyl plastic continued to heat for an additional

twenty minutes. However, this high degree of temperature was in excess of the stability point for the Stanyl plastic and during this time, the barrel became excessively hot and dripped melted plastic. In the meantime, the plaintiff returned to the machine and approached his toolbox which was immediately in front of the barrel. As the plaintiff was walking from his toolbox down the factory aisle in front of the barrel, the fractured screw tip and molten plastic were forcibly ejected from the barrel inflicting numerous burns on his chest and neck. Plaintiff claims the injuries caused permanent scarring on his arms and neck.

Plaintiff alleges that Kawaguchi, the manufacturer of the machine, General Plastex, the manufacturer of the screw and DSM, the manufacturer of the Stanyl, are responsible for his injuries. Defendants claim that Harbec Plastics, Inc., plaintiff's employer, is solely responsible for the accident.

## DISCUSSION

### I. Preclusion of Expert Testimony

Defendants Kawaguchi and Plastex move to preclude plaintiff's expert testimony because they allege the expert's opinions are conclusory and unreliable pursuant to Federal Rule of Evidence 702.

Federal Rule of Evidence 702 outlines the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness

> qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Court must determine whether or not proposed expert testimony is sufficiently reliable under the standards set forth in Rule 702, and if the proposed testimony is not reliable, such testimony must be precluded. Daubert v. Merrell Dow Pharamceuticals, Inc., 509 U.S. 579, 589 (1993)(holding that the Court, "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.") Moreover, "the principles governing admissibility of evidence do not change on a motion for summary judgment." Raskin v. The Wyatt Co., 125 F.3d 55, 66 (2d. Cir. 1997).

Here, plaintiff's expert Igor Paul ("Paul") is a qualified registered professional engineer with extensive education and training, and experience with the history, development and practice of industrial machine and product design and safety in the workplace. He has personally participated in the design, evaluation and/or testing of clamping equipment, hydraulic systems, point-of-operation guarding, injection and heating barrels, and the associated control systems for various horizontal and vertical injection molding machinery. In addition, Paul has also evaluated plant safety in various industrial plants producing injection molding products.

In his opinion, plaintiff's expert opined that the defective design and manufacture of the machine by Kawaguchi, and its failure to warn and instruct on how to deal with the stuck screw were significant factors in causing this accident. Furthermore, he opined to a reasonable degree of engineering certainty that the violent ejection of the fracture screw tip assembly and molten plastic, would have been prevented if the screw bore manufactured by Plastex had been machined within the design tolerances instead of being oversized by 300%. Lastly, he maintained that if DSM had provided proper warnings this accident could have been prevented. The expert bases his opinions on sufficient facts outlined in this case.

Accordingly, the Court finds that his opinions conform with the requirements of Federal Rule of Evidence 702 and are sufficiently reliable to be submitted to a jury. Thus, defendants' Kawaguchi and Plastex motions to preclude plaintiff's expert testimony are denied. Defendants' requests for an evidentiary hearing on this matter are also denied.

II. Summary Judgment Standard

Summary judgment is proper when "there is no genuine issue as to any material fact and...the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In evaluating a motion for summary judgment, courts must draw all reasonable inferences in favor of the non-movant. See, generally, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### A. Plaintiff's Claim of Negligence

Plaintiff alleges that all defendants were negligent and/or reckless in designing and manufacturing their products and for failing to provide adequate warnings about their products.

"In the ordinary products liability case, the failure to warn follows a negligence formula... 1) a duty on the part of the defendant to conform to a certain standard of conduct with respect to the plaintiff, 2) a failure by the defendant to so conform, and 3) a reasonably close causal connection between the defendant's conduct and some resulting injury to the plaintiff [proximate cause]." Cresser v. American Tobacco Company, 662 N.Y.S.2d 374, 379 (N.Y. Sup. Ct. 1997).

#### 1. As to Kawaguchi

Plaintiff alleges that Kawaguchi failed to provide adequate warnings about its machine. Plaintiff's expert, Paul, states that Kawaguchi should have provided proper warnings and instructions in the manual, on the equipment, and on the diagnostic and problem screens to *never* heat the product in the barrel while it was in the service position. Moreover, Paul maintains that Kawaguchi should have provided instructions as to how to safely remove a "frozen" screw tip and screw from the barrel. Kawaguchi's expert disagrees with these statements, maintaining Kawaguchi's warnings and/or instruction information was adequate and did not, as claimed by Paul, cause or contribute to the plaintiff's injuries. Therefore, genuine issues of material fact exist. These conflicting opinions create

a genuine issue of material fact, and accordingly, Kawaguchi's motion for summary judgment is denied with respect to plaintiff's claim of negligence against Kawaguchi.

### 2. As to Plastex

Plaintiff alleges that Plastex failed to provide adequate warnings about its screw. Plastex contends that it cannot be held responsible for failure to warn of the danger that was obvious and known to the plaintiff, and that it cannot be held responsible for failure to warn of a danger that was unforeseeable. This dispute presents a question of material fact, thus, Plastex's motion for summary judgment is denied as to plaintiff's claim of negligence against Plastex.

### 3. As to DSM

Plaintiff alleges that DSM failed to provide adequate warnings about its product, Stanyl. Plaintiff's expert states that DSM failed to provide adequate and effective warnings about the severe over-heating hazards associated with the Stanyl plastic. DSM's expert, E. Rush Barnett, concludes that DSM's warnings in its packaging were adequately sufficient and met OSHA standards. Thus, these disputed opinions by qualified experts present questions of fact. DSM's motion for summary judgment is denied as to plaintiff's claim of negligence against DSM.

### B. Plaintiff's Claims of Strict Products Liability

Plaintiff maintains that defendants should be liable under the theory of strict products liability.

"The doctrine of strict products liability renders the manufacturer of a defective product liable to any person injured thereby, regardless of privity, foreseeability or due care, if the defect was a substantial factor in bringing about the injury and provided (1) that at the time of the occurrence the product was being used for the purpose and in the manner normally intended, (2) that if the person injured is himself the user of the product he would not by the exercise of reasonable care have both discovered the defect and perceived its danger and (3) that by the exercise of reasonable care the person injured would not otherwise have averted the injury." Van Iderstine v. Lane Pipe Corporation, 455 N.Y.S.2d 450, 451-452 (N.Y. App. Div. 4th Dep't 1982)(citing Codling v. Paglia, 32 N.Y.2d 330, 342 (N.Y. 1973)).

### 1. As to Kawaguchi

Plaintiff maintains that Kawaguchi owed a duty of strict products liability not to harm the plaintiff through the use of its product and that the defective conditions of its product brought forth the injuries sustained by the plaintiff. According to plaintiff's expert Paul, the design of the Kawaguchi injection molding machine was defective in that it allowed plastic to be heated in the injection barrel while the barrel was pivoted out of its safely guarded, normal operating position to a completely unguarded maintenance service position. Furthermore, Paul opines that Kawaguchi should have provided a mechanism which would have prevented the barrel from being pivoted out of its safe operating position while there was

heated plastic in the barrel. In addition, plaintiff's expert provides details as to how this safer design could have been accomplished. Kawaguchi's expert, William Eaton disputes these opinions and claims that the machine was designed in accordance with the state of the industry at the time of its manufacture and sale and was reasonably safe for its intended industrial use. Because of this conflicting testimony by qualified experts with respect to whether or not the Kawaguchi machine was defectively designed, genuine issues of material fact exist, which preclude the granting of summary judgment on plaintiff's claim of strict products liability against Kawaguchi.

### 2. As to Plastex

Plaintiff maintains that Plastex owed a duty of strict products liability not to harm the plaintiff through the use of its product and that the defective conditions of its product brought forth the injuries sustained by the plaintiff. Specifically, plaintiff maintains that Plastex is liable for the defective design and manufacture of the 55-millimeter single stage screw it sold to Harbec. Plaintiff's expert maintains that had the Plastex screw bore been designed within the tolerances of the original equipment instead of being oversized by more than 300%, the ejection of the fractured screw and the molten plastic would have been prevented. Plastex's expert, Thomas Butler, refutes this testimony, maintaining that the screw was not defectively designed and was indeed reasonably safe for its intended use. Because there is a conflict between these expert

testimonies, genuine issues of material fact exist. Thus with respect to whether or not the screw was defectively designed, Plastex's motion for summary judgment is denied as to plaintiff's claim of strict products liability against Plastex.

        3. <u>As to DSM-</u>

Plaintiff maintains that DSM owed a duty of strict products liability not to harm the plaintiff through the use of its product and that the defective conditions of its product brought forth the injuries sustained by the plaintiff. However, plaintiff has only provided issues of fact concerning DSM's potential negligence liability and has failed to provide sufficient evidence to substantiate a claim for strict products liability. Plaintiff has provided no proof either through its expert or on its own that the Stanyl was defective. Therefore, DSM's motion for summary judgment is granted in-part with respect to plaintiff's claim of strict products liability against DSM.

        C. <u>Plaintiff's Claim of Breach of Implied/Express Warranty</u>

Plaintiff alleges that defendants breached their express and/or implied warranties.

To state a claim for an implied warranty with respect to a product, the plaintiff must, inter alia, prove that the product was defective or not fit for the purpose which it was intended. <u>See</u>, <u>Codling v. Paglia</u>, 32 N.Y.2d 330, 338 (N.Y. 1973). To establish the breach of an express warranty, the plaintiff must show that there was an "affirmation of fact or

promise by the seller, the natural tendency of which [was] to induce the buyer to purchase" and that the warranty was relied upon to the plaintiff's detriment. <u>Friedman v. Medtronic</u>, Inc. 345 N.Y.S.2d 637, 643 (N.Y. App. Div. 2d Dep't 1973).

### 1. <u>As to Kawaguchi-</u>

Plaintiff alleges that Kawaguchi warranted that the injection molding machine was free of defects, of merchantable quality, and fit for the purpose and manner intended. Furthermore, plaintiff maintains that Kawaguchi wantonly and recklessly breached its warranties both express and implied. A cause of action for breach of warranty is governed by a four-year statute of limitations. <u>See</u>, N.Y. U.C.C. Law § 2-725. The cause of action against a manufacturer accrues on the date the party charged tenders delivery of the product, not the date that the product was sold to the plaintiff. <u>See</u>, <u>Heller v. U.S. Suzuki Motor Corp.</u>, 64 N.Y.2d 407 (N.Y. 1985).

In May of 1987, the machine was sold by Kawaguchi to Tomen, Ltd. The accident which is the subject of this litigation did not occur until more than ten years later. Thus, the breach of warranty claims are time barred. Kawaguchi's motion for summary judgment is granted in respect to the plaintiff's breach of warranties claim against Kawaguchi.

### 2. <u>As to Plastex</u>-

Plaintiff alleges that Plastex warranted that the screw was free of defects, of merchantable quality, and fit for the purpose and manner intended. Furthermore, plaintiff maintains that Plastex wantonly and recklessly breached its warranties

both express and implied. Specifically, plaintiff claims that Plastex expressly represented and warranted that it would design and manufacture a "new 55 mm Kawaguchi single stage screw..finished to OEM [original equipment manufacturer] specifications....". Furthermore, plaintiff claims that because the screw fractured under the intense pressure caused by heating of the Stanyl plastic, it breached its warranty. Plastex maintains no such warranty was ever given. Thus, a question of fact is presented as to whether Plastex breached an express and/or implied warranty. Plastex's motion for summary judgment is denied with respect to plaintiff's claim of breach of warranty by Plastex.

### 3. As to DSM-

Plaintiff alleges that DSM warranted that the Stanyl plastic was free of defects, of merchantable quality, and fit for the purpose and manner intended. Furthermore, plaintiff maintains that DSM wantonly and recklessly breached its warranties both express and implied. However, plaintiff has only provided issues of fact concerning DSM's potential negligence liability and has failed to provide sufficient evidence to substantiate a breach of warranty claim. Thus, DSM's motion for summary judgment is granted with respect to plaintiff's claim of breach of warranty against DSM.

## CONCLUSION

For the reasons set forth above, defendants' motions to preclude plaintiff's expert testimony are denied.

Kawaguchi's motion for summary judgment with respect to plaintiff's negligence claim is denied, with respect to plaintiff's strict products liability claim is denied, and with respect to plaintiff's breach of warranty claim is granted.

Plastex's motion for summary judgment is denied in its entirety.

DSM's motion for summary judgment with respect to plaintiff's negligence claim is denied, with respect to plaintiff's strict products liability claim is granted, and with respect to plaintiff's breach of warranty claim is granted.

                         S/ Michael A. Telesca
                           MICHAEL A. TELESCA
                     United States District Judge

Dated:   Rochester, New York
         March 8, 2006